## STATE ex rel. McCARTHY BROTHERS COMPANY v. DISTRICT COURT OF HENNEPIN COUNTY AND OTHERS.[1]

November 1, 1918.

No. 21,103.

**Workmen's Compensation Act — death outside of Minnesota — right to compensation.**

> Respondent's husband resided at Bismarck, North Dakota. He was in the employ of the relator, whose principal place of business was at Minneapolis, Minnesota. He received a salary and traveling expenses, excepting board while at his home. His duties were to solicit the ship- ment of grain from west of the Missouri river to relator, for sale on commission. While on his way home from his field of labor on Sunday morning, he came to his death by accidental drowning, while attempt- ing to cross the Missouri in a row-boat. *Held*, that his dependents are entitled to recover compensation under the Minnesota Workmen's Com- pensation Act.

Upon the relation of McCarthy Brothers Company the supreme court granted its writ of certiorari directed to the district court for Hennepin county and the Honorable Charles S. Jelley, one of the judges thereof,

[1]Reported in 169 N. W. 274.

to review the proceedings in that court under the Workmen's Compensation Act brought by Blanche Von Hagen, as widow and mother of three children, against relator, as employer. Affirmed.

*Cray & Eaton,* for relators.

*McNamara & Waters,* for respondents.

QUINN, J.

Certiorari to the district court of Hennepin county to review a judgment granting to respondents compensation under the Minnesota Workmen's Compensation Act for the death of Arnold Albert Von Hagen, husband of respondent Blanche Von Hagen, and father of the three minors mentioned in the complaint.

The cause was tried before the court without a jury and submitted for decision upon the pleadings and proofs of the parties. The court made findings of fact and conclusions of law and ordered judgment that respondents have and recover the sum of $11 per week for 300 weeks; $100 funeral expenses and $74.60 costs and disbursements. Judgment was entered accordingly.

On April 8, 1917, and for a number of years prior thereto, Von Hagen resided with his family at their home in Bismarck, in the state of North Dakota. Bismarck is on the east and Mandan a few miles distant on the west side of the Missouri river. Von Hagen was in the employ, upon a salary and traveling expenses, excepting board and lodging while at his home, of McCarthy Brothers Company, a Minnesota corporation doing a general grain brokerage business in the city of Minneapolis, this state. The contract of employment was made there. It was Von Hagen's duty to travel about, call upon the grain dealers throughout his territory, and solicit the shipment of grain to relators at Minneapolis, for sale on commission. He was given no directions as to how or where he might travel, such matters being left to his judgment. Relator's business cards, which were presented to its customers, gave Von Hagen's address as Bismarck, North Dakota. It was there he received his mail.

Decedent spent the night of Friday, April 6, at his home. The following morning he went to New Salem and transacted some business, returning by way of Mandan where he arrived at about 7 or 8 o'clock Saturday evening. The channel of the Missouri river where the rail-

way crosses from Bismarck to Mandan is about 600 feet wide and spanned by a high bridge. It is about two miles from the westerly end of this bridge across bottom lands to the easterly yard limits in the city of Mandan. The railway track across these bottoms is on a grade six or seven feet high. On a line between the Mandan yards and the bridge is a mound or high tract of land. The ice in the river had gorged at a point about 12 miles above Mandan. Friday night this gorge gave way, with the result that the railroad track across the bottoms at Mandan was covered with water to the depth of two or three feet, and all traffic between Mandan and Bismarck was abandoned from Saturday morning until Monday night. On Sunday morning, for the purpose of getting home, Von Hagen and three other traveling men went down to the easterly end of the yards at Mandan, and, with two helpers, embarked in a round bottomed skiff and started to row to a point near the bridge. When they reached a point near the mound they concluded that the current and wind were too strong for them to safely proceed further, and they attempted to turn around when the boat came into contact with the top of a wire fence and capsized. The men held fast thereto, but the current was strong, the water cold, and they were shortly forced to release their hold. All were drowned save one of the helpers.

It is urged that decedent was not within the protection of the Minnesota Workmen's Compensation Act at the time of his death, because it appears that he did not come to his death by reason of an accident arising out of and in the course of his employment; that at the time of the accident he had been through with his work since the preceding day; that there was no necessity for his getting home on Sunday; that in order to do so he undertook an extremely hazardous trip for his own purposes and not in connection with the business of his employers. We are unable to agree with these contentions. Decedent's duties required his traveling from place to place in his territory, which was several hundred miles from his employers' place of business. It was proper that he have some regular or fixed place for communicating with his employers. His home was near his field of labor. He made it his headquarters as well as his retreat for over Sunday, as he properly would, and as his employers must naturally have expected and intended he should do. Indeed all of the correspondence between them so indicates.

We see no reason why he might not properly, and without stepping outside the scope of his employment return to his home from his field of labor on the Sabbath day. The case comes within the rules announced in State v. District Court of Hennepin County, 139 Minn. 205, 166 N. W. 185. We think the trial court was justified in finding from the evidence, that decedent came to his death by reason of an accident arising out of and in the course of his employment. When he attempted to cross the river, the usual means of travel by rail had been abandoned because of the high water. The only available means of crossing was by boat. Others had crossed over safely by the same means on the previous day. It was left to decedent's judgment as to how or where he might travel. He may have been somewhat negligent, but there is nothing to indicate an intentional or wilful want of care on his part. He was in the act of returning to the shore when the accident occurred. To justify a recovery under the statute, it is unimportant that the employee might have been at fault, if not wilfully so. G. S. 1913, § 8203. The record justifies the findings of the trial court.

Affirmed.