WYNN et al. v. SOUTHERN SURETY CO.

No. 880.

Court of Civil Appeals of Texas. Waco.

March 13, 1930.

Rehearing Denied April 17, 1930.

692

E. C. Street and W. L. Eason, both of Waco, for appellants.

Witt, Terrell & Witt, of Waco, for appellee.

BARCUS, J.

Appellee instituted this suit to set aside an award that had been made by the Industrial Accident Board in favor of appellants. The cause was tried to a jury, and at the conclusion of the testimony the trial court instructed the jury to return a verdict for appellee. Based thereon, judgment was entered denying appellants any recovery.

The facts are practically without dispute. It appears that H. D. Wynn, the husband of Mrs. Pearl Wynn and father of Alice Elizabeth Wynn, appellants, was working for the Laney Creamery Company, Inc., of San Antonio, in the capacity of a field man, his duties being to visit creameries in a territory extending over a large portion of Texas. His employment required him to not only visit the creameries and solicit business, but to assist in establishing new creameries. He was employed on a salary of $125 a month and expenses, and was furnished an automobile in which to make his territory. He began working for said company in January, 1926. His trips to the northern portion of his territory, which embraced Waco, Tex., kept him from the office about two weeks. On the 5th of March he worked the territory around Cameron and Lott, south of Waco. On Saturday, the 6th of March, he worked in McGregor, west of Waco, and then came to Waco and registered at the hotel. He wrote the Laney Creamery Company on said date that the roads were extremely bad by reason of heavy rains, but that he hoped by the following Tuesday to be able to go to Hamilton county on the company's business. There were two customers in Waco that he was expected to see while there; namely, the M–B Ise Kream Company and the Purity Ice Cream Company. On Saturday afternoon he called the M–B Ise Kream Company to ascertain if it would be open on Sunday, and he was told that it would be. Under the terms of his employment, Mr. Wynn was, when necessary, expected to work on Sunday and see his prospective customers. Noth-

ing further is known about Mr. Wynn's movements until 6:30 Sunday afternoon, March 7th, at which time he went to a restaurant on South Sixth street in the city of Waco for his evening meal. After his meal he walked about 100 feet to Austin avenue, the main street in said city, and attempted to cross Sixth street, going toward the Raleigh Hotel, where he was registered, and in attempting to cross said street he was struck by an automobile and killed. There was no evidence that he called on either the M–B Ise Kream Company or the Purity Ice Cream Company on Sunday, or that he did any other act during said day of any kind or character.

The question for determination is whether the above facts make a prima facie showing that Mr. Wynn received his injuries "in the course of his employment," as contemplated by section 1, article 8306, of the Revised Statutes.

Appellants contend that, since Mr. Wynn was a field man, and his duties required him to travel from place to place and be away from home for several days or weeks at a time, the injury which he received was presumed to have been received "in the course of his employment," and that the fact that he did receive an injury which resulted in his death while out on a trip for the company made a prima facie case in support thereof.

■■ As has been often stated, each case coming within the purview of the Workmen's Compensation Act (Rev. St. 1925, arts. 8306–8309, as amended) must in its final analysis depend upon the facts surrounding the individual case. The courts have uniformly held that, where an employee's duties are to be performed within or on the property of his employer, an injury is received "in the course of his employment" if the same is received while on said premises, engaged in his master's business, or if received while getting on or off of said premises. The courts further hold with practical unanimity that, if the injury occurs after the employee has left the premises of his employer and gotten upon the highway or street that is not in any way under the control of the employer, any injury which he might receive as a result of accidents that are common to the general traveling public is not received "in the course of his employment."

In United States Fidelity & Guaranty Company v. Lowery (Tex. Civ. App.) 231 S. W. 818, it was held that, where a traveling salesman was returning by the direct route and method from a trip on which he had been sent by his employer, the injury was received "in the course of his employment."

In Texas Employers' Insurance Ass'n v. Bailey (Tex. Civ. App.) 266 S. W. 192, it

was held that, where a laundry driver gave a man who had a gun a ride, and the gun was accidentally discharged and caused an injury to said driver, that same was not received "in the course of his employment."

In Langford v. El Paso Baking Company (Tex. Civ. App.) 1 S.W.(2d) 476, it was held that, where an employee was delivering some bread as an accommodation for another employee of said company, in a car which did not belong to the company, but which did belong to the manager thereof, his acts were not binding upon said company, since he was not engaged in his master's business.

In Ætna Life Insurance Company v. Schenck (Tex. Civ. App.) 10 S.W.(2d) 206, it was held that, where a traveling salesman made an engagement to go to Houston on his employer's business on Sunday, but, instead of doing so, he went with some friends to Galveston on a pleasure trip, and, while returning from said pleasure trip, was injured, said injury was not received "in the course of his employment."

In London Guaranty & Accident Company v. Smith (Tex. Civ. App.) 290 S. W. 774, it was held that, where a saleslady, who under her employment was required to work on Saturday night until nine o'clock, was told Saturday by her employer to go to her supper early and return in order that she might thereafter go to the hotel with him and assist in buying some goods, and she was injured while going to her supper several blocks away, her injuries were not received "in the course of her employment."

In Ætna Life Insurance Company v. Burnett (Tex. Com. App.) 283 S. W. 783, it was held that, where a traveling salesman, early in the morning, took his gun and went hunting, and thereafter came back and left the gun in the car and called on his numerous customers, and then, before calling on the last customer in the town, started to remove the gun from the car, and the gun was discharged and injured him, said injury was not received "in the course of his employment."

In Forman v. Industrial Accident Commission, 31 Cal. App. 441, 160 P. 857, it was held that, where a traveling salesman stopped at the hotel at night, and the hotel caught fire, and he was injured, same was not received "in the course of his employment."

In Davidson v. Pansy Waist Company, 240 N. Y. 584, 148 N. E. 715 it was held that, where a traveling salesman had registered at the hotel, and was injured therein while taking a bath and getting ready for his day's work, the injury was not received "in the course of his employment."

In Southern Casualty Company v. Ehlers (Tex. Civ. App.) 14 S.W.(2d) 111, it was held that, where a traveling salesman took some automobiles to deliver, and reached the place of delivery too late in the evening to make delivery on that day, and then drove some twenty miles to see two other prospective purchasers of cars, and, after seeing said prospective purchasers, about ten o'clock at night went to a dance, and then started back to spend the night with the intention of making delivery of the cars early next morning, and was injured on the road from the dance to the place where he was to spend the night, said injury was not received "in the course of his employment."

■■ The courts have uniformly held that the burden of proof is upon the claimant under the Workmen's Compensation Law to establish that the injury was received in the course of employment and while in the discharge of the employer's business. McDowell v. Security Union Insurance Co. (Tex. Civ. App.) 10 S.W.(2d) 782; Texas Employers' Insurance Ass'n v. Mints (Tex. Civ. App.) 10 S.W.(2d) 220; Texas Employers' Insurance Ass'n v. Herring (Tex. Civ. App.) 269 S. W. 249; Id. (Com. App.) 280 S. W. 740. As we view the testimony in this case in its most favorable light, there is not any circumstance or fact that tends to show that Mr. Wynn at the time he was injured was engaged in his employer's business, or that the injury was received in the course of his employment. A traveling salesman, while eating his meals or sleeping at hotels, or attending church or theaters or going on picnics or private errands for his own pleasure or profit, is not, within the contemplation of the Workmen's Compensation Act, engaged in his employer's business, and an injury received by him while performing said acts or engaged in said recreations is not, within the purview of said law, an injury received "in the court of his employment."

■ The facts in the present case show that Mr. Wynn registered at the Raleigh Hotel on Saturday, and there is no testimony that gives any inkling or suggestion as to what he did or where he went or how he was entertained from the time he registered at said hotel until the time he was eating his evening meal at 6:30 at the café on Sunday afternoon. Neither is there any suggestion in the record as to where he was going after he finished his meal and started across the street going toward his hotel, which was also toward some churches, and also toward the place of business of the M–B Ise Kream Company. He did not have any engagement to meet any of the employees of the M–B Ise Kream Company on Sunday night. Neither was it shown that he had during that day or afternoon tried or attempted to see any of the employees of either of the ice cream companies in the city of Waco. We do not think it could be presumed that, because Mr. Wynn was a traveling salesman

away from home, during Sunday, and especially between 6 and 7 o'clock Sunday evening, he was doing any act in the course of his employment or performing any services for his employer. Under the undisputed facts in this case, we think the trial court properly instructed the jury to return a verdict for appellee.

Appellants, by a number of assignments and propositions, complain of the action of the trial court in overruling their plea in abatement and in sustaining certain special exceptions of appellee to portions of their petition. We have carefully examined all of appellants' assignments of error and propositions, and do not think any of them show any reason for reversing the judgment of the trial court.

All of appellants' propositions are overruled, and the judgment of the trial court is affirmed.