[S. F. No. 12110. In Bank.—November 9, 1926.]

WM. L. PATTIANI, Petitioner, v. THE INDUSTRIAL ACCIDENT COMMISSION OF THE STATE OF CALFORNIA, LANGLEY & MICHAELS COMPANY (a Corporation) et al., Respondents.

[1] WORKMEN'S COMPENSATION ACT—CONTAGIOUS DISEASES—SPECIAL EXPOSURE—RIGHT OF RECOVERY.—Under the Workmen's Compensation Act, an employee who, in the course of the performance of his duties as such, whether in the immediate place of his employment or in whatever place he may be in pursuance of his employer's directions, contracts a contagious or infectious disorder, must, in order to recover compensation, establish the fact that he was subjected to some special exposure in excess of that of the commonalty, and in the absence of such showing of special exposure the illness or death of the employee cannot be said to have been proximately caused by injury arising out of his employment.

---

1. See 27 Cal. Jur. 396.

[2] ID. — CONTACT WITH CONTAGIOUS DISEASE — INSUFFICIENT EVI-
DENCE.—In a proceeding before the Industrial Accident Commis-
sion in which an employee claims compensation on account of
injuries in contracting typhoid fever which he claims resulted
from eating contaminated oysters in a city he was visiting
in the course of his duties, in which there was an epidemic of
typhoid fever, a recovery cannot be had where no direct connec-
tion between the employee and his infection with the disease is
shown and the Commission finds against his claim that his illness
resulted from having eaten contaminated oysters. The mere
fact that there was an epidemic of typhoid fever in the city
during petitioner's visit constituted an exposure or risk of the
commonalty in general and was not peculiar to nor character-
istic of his employment.

(1) Workmen's Compensation Acts, **C. J.**, p. 77, n. 97.    (2) Work-
men's Compensation Acts, **C. J.**, p. 115, n. 37.

APPLICATION for a Writ of Certiorari to review an
order of the Industrial Accident Commission denying an
award. Order affirmed.

The facts are stated in the opinion of the court.

McCutchen, Olney, Mannon & Greene for Petitioner.

Frank J. Creede, M. J. Conklin, H. G. Sanford, G. C.
Faulkner and Warren H. Pillsbury for Respondents.

RICHARDS, J.—The petitioner herein applied for and
was granted a writ of review, whereby he sought to have
annulled an order of the Industrial Accident Commission
denying him compensation. The petitioner was employed
during the latter portion of the year 1924 by Langley &
Michaels Company of the city of San Francisco, a corpora-
tion engaged in the maintaining and operation of drug-
stores. In the early part of November of that year the
petitioner was sent by his employers upon a business trip,
in the course of which he was to visit a number of eastern
cities for the purpose of investigating the subject of new
equipment to be installed in his employer's place of busi-
ness in San Francisco, and to negotiate for the purchase of

2. Right to compensation for results of exposure to contagious
disease, note, 11 A. L. R. 790. See, also, 27 R. C. L. 397.

such equipment. In pursuance of his said instructions petitioner left San Francisco on November 2, 1924, on his way east, calling at Portland, Seattle, Minneapolis, Chicago, Cleveland, Albany, and New York, and thence returning home through New Jersey to Philadelphia, Indianapolis, St. Louis, Kansas City, Los Angeles, and finally to the place of his regular employment, San Francisco. He arrived home on the 2d of December, 1924. While in the city of New York he spent five days, during which he lived at a well-known hotel, and visited a number of business establishments within the scope of his instructions. He testified that while in said city and on or about the 17th of November, and also about three days later, he ate raw oysters at his hotel, and possibly at another place. After leaving New York and while upon his homeward trip he found himself ill, which illness continued until he arrived in San Francisco and thereafter for some time. He sought medical aid and it was finally determined that his ailment was that of typhoid fever. He applied to the Industrial Accident Commission for an award and a hearing was had upon his said application, whereupon the Commission made the following finding: "That the employment of the applicant was normally and generally in the city and county of San Francisco; . . . that upon the occasion of the alleged injury herein, the applicant was temporarily in the city of New York, by reason of a trip or visit to said locality arising out of his employment; that while upon such trip or visit at New York the applicant contracted and became ill with typhoid fever; that at the time of said visit or trip by the applicant in New York City there was prevalent in said locality an epidemic of typhoid fever; that the evidence does not establish as a fact that said epidemic was caused or aggravated by contaminated oysters; that the fact that applicant was required by his employment to visit or sojourn in a locality where there was an epidemic of disease, does not constitute a special exposure arising out of the employment, but was in fact an exposure or risk of the commonalty in general and not peculiar to or characteristic of said employment." The Commission, basing its conclusion upon its foregoing finding as to the facts, denied an award, and also denied the petitioner's application for a rehearing, whereupon he applied to this court for a writ of review.

The only assignable connection with typhoid infection which the applicant undertook to show at the hearing before the Commission was that of his having eaten contaminated oysters while in the city of New York. The Commission found against that contention and by so doing must be held to have negatived the conclusion that the applicant contracted said disease because of the existence of such epidemic in said city, or by any contact with such prevailing disorder.

The sole question presented in this proceeding is as to whether or not the injury of said employee is compensable in view of the findings of the Commission with respect to the nature and circumstances and origin of his said injury, which finding is supported by the evidence presented to the Commission. In the *Matter of Dryden* v. *Lachman Bros.,* 8 Cal. I. A. C. 14, wherein a hearing upon application for a writ of review was denied by this court, the facts were these: The applicant for compensation, in the course of his employment and in the city in which he was employed, visited a home to take measurements for window-shades. There had been scarlatina in this home prior to such visit, but the house had been fumigated. Subsequent to such visit a girl living in the home became ill of scarlatina, as did also the said applicant several days later. Compensation was denied, the Commission saying: "It is not unreasonable to suppose that . . . applicant did contract scarlatina while at work measuring for or putting up the shades above mentioned, although he might have contracted the disease elsewhere. It is in evidence that there is at all times scarlatina in San Francisco and that the commonalty is likely to be subjected to contagion from that source. . . . It is certain that compensation could not be allowed for an injury sustained in the form of a contagious or infectious disease where the risk of such contagion or infection was a risk of the commonalty. There must be as a justification for an award for compensation for such an injury a very special exposure beyond that to which the commonalty is subjected. Of course, the commonalty did not have access to No. 314 Locust Street, San Francisco, but the risk of infection from that source was a risk participated in by every person who for any reason did enter that home during the interim between the two periods of quarantine, and therefore and for that reason the risk was not a very special one appertaining

to the industry in which applicant was engaged." In deny-ing the application for a writ of review in the above matter this court apparently approved the conclusion of the Com-mission that, in order to the recovery of compensation for an injury arising out of the contraction of an infectious or con-tagious disorder while engaged in the performance of the duties of the employee in the place of his regular employ-ment, "there must be as a justification for an award for com-pensation for such an injury a very special exposure beyond that to which the commonalty is subjected." In the *Matter of Shepherd* v. *A. Schilling & Co.,* 11 Cal. I. A. C. 57, the husband of the applicant for an award was employed as a sales manager of his employer, the principal place of busi-ness of which was the city of Oakland. In the course of his employment, and on November 4, 1922, he left Oakland, traveling through the northwest and thence to Denver and other towns in its region, and thence to Albuquerque, at which latter place smallpox developed, and from its effects he died on December 13, 1922. The evidence before the Com-mission showed that a smallpox epidemic was prevalent in Denver from September 1, 1922, into December, 1922, and that the deceased, who was in Denver part of that period, interviewed between fifty and a hundred people. It is a fair intendment from the findings of the Commission that the deceased probably contracted said disease while in Denver; but there was neither allegation nor proof before the Com-mission that he was exposed there to any extent beyond that of the general public, nor was there any evidence to the effect that any of the people interviewed were afflicted with said disease. The Commission held that "the evidence was insufficient to establish that the employment caused an ex-posure in excess of that of the commonalty, and that in the absence of such a showing of special exposure the illness and death could not be said to have been proximately caused by injury arising out of the employment." [1] The effect of the denial by this court of a writ of review in each of the foregoing proceedings is that of holding that in order to a recovery of an award by an employee who, in the course of the performance of his duties as such, whether in the im-mediate place of his employment or in whatever place he may be in pursuance of his employer's directions, contracts a contagious or infectious disorder, he must, in order to such

recovery, establish the fact that he was subjected to some special exposure in excess of that of the commonalty, and that in the absence of such showing of special exposure the illness or death of the employee cannot be said to have been proximately caused by injury arising out of his employment.     In the case of *San Francisco* v. *Industrial Accident Com.*, 183 Cal. 273 [191 Pac. 26], the subject of occupational diseases or disorders, and also of those diseases and disorders which are not occupational but are the result of exposure to contagious or infectious diseases, is given exhaustive consideration by this court, and it is there held that both classes of such injuries come within the provisions of the Workmen's Compensation Act.     (Stats. 1917, p. 831.)     The injury which the husband of the applicant for an award in that case sustained was that of his contraction of influenza in the course of his employment, and from which he died. The contention of the respondent in that case was that the disease contracted was one in respect to which an epidemic was prevalent in the place of the deceased's employment at the time and that his risk of contagion was no greater than that of the commonalty and hence that his injury was not compensable.     It was pointed out, however, in that case that the employee at the time he contracted such disorder was engaged in the occupation of a nurse, and that in the course of his duties as such nurse he had been required to handle and had been exposed to at least twelve developed cases of influenza, and that his exposure, because of his work, was far greater than that of the average person, the preponderance of the medical testimony being that the employee contracted the disease as a result of his peculiar exposure to it incidental to his employment.     This court in affirming the award in that proceeding based its conclusion not upon the proven fact that an epidemic of influenza was prevalent in the place of his employment, but upon the fact of his peculiar exposure thereto.     In so doing the court reviewed with approval the case of *United Paper Board Co.* v. *Lewis*, 65 Ind. App. 356 [117 N. E. 276, 277], wherein the subject of industrial or occupational diseases and also of those which are the result of contagious or infectious disorders was given exhaustive consideration, with much citation of authority, and wherein that court held that as to the latter class of disorders the injury arising therefrom was com-

pensable when "contracted as a direct result of unusual circumstances connected therewith." In the case of *Larson* v. *Industrial Accident Com.*, 193 Cal. 406 [224 Pac. 744], while the injury for which recovery was sought in that case did not arise out of a contagious or infectious disease, but did arise out of the fact that the employee was exposed to an injury in the place where he was required by his employer to be, this court said: "There must be some connection between the injury and the employment other than the mere fact that the employment brought the injured party to the place of injury. There must be a causal connection between the employment and the injury which had its origin in a risk connected with the employment and flowed from that source as a rational and natural consequence." In the *Matter of Miller* v. *Simon-Newman Co. et al.*, wherein this court denied a writ of review and by so doing affirmed the decision of the Industrial Accident Commission rendered December 21, 1925, the facts were that the injury to the applicant for an award in that case arose out of his special exposure to the bites of mosquitoes while sleeping in a bunk-house infested with mosquitoes and by having been bitten by them, his infection with the disorder from which he suffered being directly traceable to the mosquito bites, and the decision of the Commission granting him an award being based upon his special exposure in that regard. It will thus be seen that this court has not thus far in its recent decisions seen fit to broaden the rule adopted by it in its approval of the action of the Commission in the cases of *Dryden* v. *Lachman Bros.* and *Shepherd* v. *A. Schilling & Co., supra*. It has not been made to appear to this court that its action and attitude in so doing is at variance with the rule which has been declared in other jurisdictions, wherein the statutes relating to workmen's compensation are similar to our own. Among these may be cited *Brodin's Case*, 124 Me. 162 [126 Atl. 829], wherein an employee while working for a highway commission, and required to be in a construction camp, drank water supplied by the employer, and which was shown to be infected with typhoid germs, and as a direct result thereof contracted typhoid fever. It was held that the employee, upon proof of such special exposure, was entitled to compensation on the authority of *Vennen* v. *New Dells Lumber Co.*, 161 Wis. 370

[Ann. Cas. 1918B, 293, L. R. A. 1916A, 273, 154 N. W. 640], and *Wasmuth etc. Co.* v. *Karst*, 77 Ind. App. 279 [133 N. E. 609], in each of which cases the recovery allowed and proved was predicated upon the direct connection between the infection and the injury which the evidence before the Commission disclosed. [2] In the instant case, however, no such direct connection between the employee and his infection with the disease of typhoid was shown. On the contrary, his attempted proof of such connection was negatived by the Commission in its finding that the evidence did not establish the fact that the epidemic of typhoid in New York was caused or aggravated by contaminated oysters. No other direct contact between the petitioner herein and the existing epidemic of typhoid in New York during the brief period of his visit there being shown, we are of the opinion that the Commission was correct in holding that the evidence before it was insufficient to show a special exposure arising out of the employment, and that the mere fact that there was an epidemic of typhoid fever in said city during the period of the petitioner's visit there constituted an exposure or risk of the commonalty in general and was not peculiar to or characteristic of his employment, and for that reason compensation to the applicant was properly denied.

The attention of this court has been called to the decision of the Commission in the matter of *Biscailuz* v. *County of Los Angeles*, 11 Cal. I. A. C. 121, wherein an award was made to the applicant therefor upon a showing that he had been sent into a district in the tropics wherein a contagious fever was raging, upon a mission peculiar to his special employment. It appeared, however, in that proceeding that the employer, through its officials, was fully aware of the prevalence of such contagious disorder in the place to which it sent its employee, and in the face of such knowledge directed its employee to go to said place. There were other peculiar circumstances connected with that proceeding which might have sufficed to support the award made therein. However, that matter was not brought to this court upon application for a writ of review.

In arriving at our conclusion in the instant case we are not to be understood as announcing a rule which might be applicable to the case wherein an employer directs his employee to go to a place wherein, within the knowledge of the

employer, there is prevalent an infectious or contagious disease. There was no such showing made in the case before us.

The order of the Commission is affirmed.

Shenk, J., Waste, C. J., Curtis, J., and Finlayson, J., concurred.

FINCH, J., *pro tem.*, Dissenting.—I dissent. According to my understanding of the record the petitioner in substance alleged in his application for compensation and undertook to show before the Commission that he contracted typhoid fever by exposure to that disease during an epidemic thereof in New York. Evidence was introduced tending to show the existence of the epidemic and the cause thereof. The Commission found that "there was prevalent in said locality an epidemic of typhoid fever," but "that the evidence does not establish as a fact that *said epidemic* was caused or aggravated by contaminated oysters." I am at a loss to understand in what manner the latter part of the finding tends to negative the allegation that the applicant contracted the disease because of the epidemic thereof. It is not even a finding that the applicant did not contract the disease by eating contaminated oysters, and if the issue is whether the disease was contracted by eating contaminated oysters, then the Commission failed to find upon that issue. If, as I believe to be true, the issue is whether the disease was contracted because of the epidemic, then the Commission either found that the disease was so contracted or failed to find upon that issue. It is the duty of the Commission "to make and file its findings upon all facts involved in the controversy." (Workmen's Compensation Act, sec. 20; *Shipbuilding Co.* v. *Industrial Accident Com.*, 70 Cal. App. 495, 497 [233 Pac. 392].) It appears clear to me, however, that the reasonable interpretation of the findings is that the applicant contracted the disease during the epidemic thereof in New York and because of the existence of such epidemic. The finding that "the evidence does not establish as a fact that said epidemic was caused or aggravated by contaminated oysters" is immaterial. The eating of raw oysters by petitioner and the infection of oysters then being sold in the New York market are not ultimate but evidentiary facts,

tending to prove the ultimate fact found by the Commission that the disease was contracted in New York during the existence of the epidemic in that city. The finding that "the fact that applicant was required by his employment to visit or sojourn in a locality where there was an epidemic of disease does not constitute a special exposure arising out of the employment," in my opinion refutes itself. It is axiomatic that to go from a place of safety into a place of danger is to incur a special risk, and if one's employment requires him to incur such risk any injury resulting therefrom certainly arises out of the employment. The language of the majority opinion implies that if the Commission had found that the disease was contracted by eating contaminated oysters the petitioner would be entitled to compensation. I am unable to distinguish between such a case and that disclosed by the findings. Typhoid fever is not communicable by mere personal contact with a person afflicted with that disease as in many infectious diseases, such as smallpox or scarlet fever, but is contracted only by taking the germs of the disease into the alimentary canal, usually by means of food or drink. Under petitioner's contract of employment, he was furnished his traveling expenses, including his board and lodging. The situation is the same as if these necessaries had been supplied by the employer on the latter's premises, and eating and drinking, as well as sleeping, were incidental to the employment, and any injury therefrom arose out of the employment. (*Brodin's Case,* 124 Me. 162 [126 Atl. 829]; *Frankamp* v. *Fordney Hotel,* 222 Mich. 525 [193 N. W. 204]; *Ames* v. *Lake Independence Lumber Co.,* 226 Mich. 83 [197 N. W. 499]; *Wasmuth-Endicott Co.* v. *Karst,* 77 Ind. App. 279 [133 N. E. 609]; *Scott & Howe Lumber Co.* v. *Industrial Commission of Wisconsin,* 184 Wis. 276 [199 N. W. 159]; *Vennen* v. *New Dells Lumber Co.,* 161 Wis. 370 [Ann. Cas. 1918B, 293, L. R. A. 1916A, 273, 154 N. W. 640]; see, also, *State Compensation Ins. Fund* v. *Industrial Acc. Com.,* 194 Cal. 28, 35 [227 Pac. 168]; *Associated Oil Co.* v. *Industrial Acc. Com.,* 191 Cal. 557, 559 [217 Pac. 744]; *Judson Mfg. Co.* v. *Industrial Acc. Com.,* 181 Cal. 300, 302 [184 Pac. 1]; *Harival* v. *Hall-Thompson Co.,* 98 Conn. 753 [120 Atl. 603]; *Stansberry* v. *Monitor Stove Co.,* 150 Minn. 1 [20 A. L. R. 316, 183 N. W. 977].) It seems to me to be immaterial whether the germs of the

disease were contained in one kind of food or another or that it was impossible to determine what particular food or drink was contaminated. Such proof is rarely possible. The disease does not become manifest for several days after the germs have been taken into the system. Where one goes into a place in which a communicable disease is epidemic, from a place where such an epidemic does not exist, and at the end of the normal period of incubation thereafter the presence of the disease in his system becomes manifest, from these facts, in the absence of a showing of any other exposure, the mind naturally, and at first blush, logically draws the inference that the disease was contracted at the place of and because of such epidemic, even though it might be conjectured that the disease was otherwise contracted from some unknown source.

It is true that an injury by disease, claimed to have been contracted during an epidemic thereof, like an injury caused by the elements, is not compensable in the absence of a showing of a special risk, but this means no more than that the risk or danger must be materially greater than that of the general public. (*McManaman's Case*, 224 Mass. 554 [113 N. E. 287]; *Central Illinois Pub. Serv. Co.* v. *Industrial Com.*, 291 Ill. 256 [13 A. L. R. 967, 126 N. E. 144].) The term "general public," however, is flexible. It may include the inhabitants of a large territory or only those of a small area, depending upon the connection in which it is used. If petitioner's regular employment had been in New York City, then, under the findings, he would not be entitled to compensation, because his risk would have been no greater than that of the general public of that city of which he would have been a part. But since his regular employment was in San Francisco, where there was not an epidemic of typhoid fever, and he was required to go, on a temporary and special mission, to New York, where typhoid fever was epidemic, the general public whose risk is to be compared with that of petitioner should, in my opinion, include the people of San Francisco as well as those of New York. If that be true, there is no escape from the conclusion that petitioner incurred a special risk by going to New York. If it were established in any case that an employee was required in the discharge of his duties to go into a home in which a patient was afflicted with a contagious disease and that there con-

tracted the disease from such patient, it would not be contended, I take it, that the injury was not compensable. I can see no difference in principle between such a case and one where the employee is required to go from a place of safety into a place where a contagious disease is epidemic and there contracts the disease. It is true that the cause of the infection in the latter case would probably be more difficult of proof, but, being satisfactorily proved, as is shown by the findings in this case, the rule should be the same. If, under the circumstances of this case, the petitioner had suffered a physical injury through violence, as in a railroad or street-car accident, no one would contend that he was not entitled to compensation. Why should the rule be different where the injury is by disease, the effects of which may be more serious and lasting than those of an injury through violence?

Prior to the enactment of the Workmen's Compensation Act it was held that "if the employer have knowledge or information showing that the particular employment is from extraneous causes known to him hazardous or dangerous to a degree beyond that which it fairly imports or is understood by the employee to be, he is bound to inform the latter of the fact or put him in possession of such information. . . . The nature or character of the agency or means through which the danger of injury to the employee is to be apprehended can make no difference in the rule. . . . And if the employer have such information or knowledge and withhold it from the employee and the latter afterward be injured in consequence thereof, the employer is liable to him in damages therefor." (*Baxter* v. *Roberts*, 44 Cal. 187, 192 [13 Am. Rep. 160].) If an employee is set to work, without warning, in a room in which a patient is sick with typhoid fever and the employee thereby contracts the disease, "he being ignorant of the danger, and unable to know of it by the exercise of ordinary care, the master is liable if he either knew, or in the exercise of ordinary care ought to have known of the danger." (*Kliegel* v. *Aitken*, 94 Wis. 432 [59 Am. St. Rep. 901, 35 L. R. A. 249, 69 N. W. 67].) It will probably be conceded that if the employee had been sent, under similar circumstances, into a place where an epidemic of a contagious disease was prevalent, and had there contracted the disease, the rule would be the same. If, under

the facts and circumstances stated, an injured employee would have had a cause of action for negligence, it would seem to follow that, under the terms of the Workmen's Compensation Act, he would be entitled to compensation upon proof of all of such facts and circumstances except that of the employer's knowledge or negligence, the right to compensation under the act being in no manner dependent upon such knowledge or negligence.

While the questions here presented may, in some respects, be distinguishable from those in the Dryden and Shepherd cases, I prefer to place my dissent frankly, though with the · greatest respect, upon the ground that, assuming the effect of those decisions to be as stated in the majority opinion, they are erroneous and ought to be overruled. In the opinion of the Commission in the Dryden case it is said: "It is certain that compensation could not be allowed for an injury sustained in the form of a contagious or infectious disease where the risk of such a contagion or infection was a risk of the commonalty. . . . Of course, the commonalty did not have access to No. 314 Locust Street, San Francisco, but the risk of infection from that source was a risk participated in by every person who for any reason did enter that home during the interim between the two periods of quarantine, and therefore and for that reason the risk was not a very special one appertaining to the industry in which applicant was engaged." A very small percentage of the inhabitants of a large city ever have occasion to enter any one particular home and the comparatively few who do enter it in no sense constitute the general public. Under the rule stated by the Commission, an employee whose duties take him into a home in which there is a contagious disease can never recover compensation for injury resulting from the exposure, however clearly it may be proved that he contracted the disease there, because all other persons who enter the home take the same risk. The fallacy of the argument is in comparing the employee's risk, not with that of the general public, but with the limited number thereof who may enter the home. Applying the same rule to injuries through violence, it would preclude a recovery in all accidents incident to travel. Excluding cases involving epidemics, the right to compensation in cases of injury by disease should be determined, in my opinion, upon the principles which are

applicable to other accidents which occur through human agencies. Since the means and sources of infection must usually be based upon observed conditions, inferences from which may or may not be correct, it is reasonable to require clear proof of such means and sources, but, when satisfactorily established, no different rule should be applied than in other cases. Where the disease is contracted during an epidemic thereof, a different rule applies, and an employee claiming compensation must show that his employment exposed him to a materially greater risk of contracting the disease than that of the general public. But this rule, as it appears to me, presupposes that the employee was a part of such general public. The reasoning of the Commission in the Shepherd case, in my opinion, is fallacious in that it compares the risk of the employee, who was in Denver temporarily and for a special purpose, with that of the general public of Denver, where the epidemic of smallpox was raging. But for his employment, the employee would not have been in Denver or have incurred the risk, and therefore his risk was special.

It has been said that the theory of the Workmen's Compensation Act "is that the risk of injury to workmen in the industries governed by the law should be borne by the industries, rather than by the individual workman alone." (*Western Indemnity Co.* v. *Pillsbury,* 170 Cal. 686, 694 [151 Pac. 398, 401].) Section 69 of the act provides: "Whenever this act, or any part or section thereof, is interpreted by a court, it shall be liberally construed by such court with the purpose of extending the benefits of the act for the protection of persons injured in the course of their employment." It appears to me that, without resorting to a liberal construction of the act, the petitioner is entitled to compensation under the facts found by the Commission. To award compensation in a case such as this is not to make a health insurance law out of the act. To be compensable, the injury must arise "out of and in the course of the employment." This limitation will prevent a recovery on account of diseases generally.

Rehearing denied.