BEDWELL *v.* DIXÏE BEE COAL CORPORATION ET AL.

[No. 15,230.   Filed November 13, 1934.]

*Frank Hamilton,* for appellant.

*Will H. Hays, Hinkle C. Hays, Alonzo C. Owens, John S. Taylor,* and *J. Olias Vanier,* for appellees.

DUDINE, J.—Appellee Dixie Bee Coal Corporation was operating a coal mine on and prior to and after April 1, 1932, and will hereinafter be referred to as "appellee." Appellee Lynch Coal Operators Reciprocal Association was the insurance carrier. On that date the miners, who were union members, went out on a strike, and appellee employed appellant and other non-union miners to work in the mine. Appellant continued to work in the mine until August 2, 1932, and the strike continued until after that date.

On that day long before the usual quitting time appellant and his co-workers were ordered by the foreman to stop working and come to the top. When they reached the top, the mine was surrounded by pickets, and the mine guards and bosses passed out rifles, ammunition and dynamite to the workers and told them to protect the mine property in the event the pickets entered upon the premises. The mine officials also told appellant and his co-workers to stay at the mine under cover until the sheriff arrived to escort them to their homes.

Appellant remained in the tipple for several hours and until he was shot in the arm by one of the pickets.

This is an appeal from an award of the Industrial Board, by a majority of the members, denying appellant compensation, the majority of the members of the Industrial Board having found that appellant's injuries "were not the result of an accident sustained by plaintiff while in the course of his employment, nor did they arise out of his employment."

The errors assigned are that the award is contrary to law, and is not sustained by the evidence.

There was no material dispute as to the circumstances under which appellant was injured. Appellant was the only witness who testified as to those circumstances, and his testimony clearly showed the facts as herein set forth.

This appeal presents but one question—and that is whether or not an injury received by an employee in the manner, and under the circumstances which attended appellant's injury, as a matter of law, arises "in the course of, and out of his employment." It is a new question for this court.

Appellee contends the decision of the Industrial Board is correct because an injury, to be compensable, must result from an "unlooked for mishap or untoward event not expected or designed," and appellee contends the evidence shows that appellant knew or should have known that there was a "continuing probability of personal violence even unto rifle fire," and appellee calls our attention to evidence which shows that for several days prior to August 2, 1932, appellant saw from twenty-five to one hundred fifty pickets, picketing the mine, and that appellant knew that appellee had employed guards to defend the premises.

As authority for the rule of law that an injury, to be compensable, must result from an unlooked for mishap or untoward event not expected or designed, appellee cites five cases, viz: *Moore* v. *Service Truck Co.* (1924), 80 Ind. App. 668, 142 N. E. 19; *Townsend and Freeman Co.* v. *Taggart* (1924), 81 Ind. App. 610, 144 N. E. 556; *Stacey Bros. Gas Co.* v. *Massey* (1931), 92 Ind. App. 348, 175 N. E. 368; *Brewer* v. *Veedersburg Paver Co.* (1931), 92 Ind. App. 547, 177 N. E. 74; *Chapman Price Steel Co.* v. *Bertels* (1931), 92 Ind. App. 634, 177 N. E. 76. In each of said cases this court recognized said rule of law, but none of said cases are determinative of this case, because of the dissimilarity of facts.

We do not consider said rule of law a proper test of compensability in this case.

The strike was called because appellee and its regular employees had disagreed as to the wages to be paid the regular employees. Appellant had no connection with the wage agreement.

Employers are required by law to furnish their employees with reasonably safe places in which to work. Appellee certainly expected that the strikers would make some trouble if they (appellees) operated the mine with non-union labor. As the mine was being operated by non-union labor, and the pickets became more numerous and more troublesome, appellee knew that the mine premises were becoming a more dangerous place in which to work. Quite probably appellee did not expect that the pickets would go so far as to shoot into the tipple, but the mere fact that appellee was mistaken in its judgment as to the extent to which the pickets would go should not relieve it of liability. The question of liability of an employer for injuries received by an employee in the course of his employment is not determined by the good or bad judgment of the employer as to the continuing safety of the place in which its employees work under growing hazards; the place must be *in fact* reasonably safe *at all times during the period of employment*. Appellee having elected to continue the operation of the mine in spite of the growing hazard until the mine premises became no longer a reasonably safe place in which to work, appellee should be held liable for appellant's injury.

Having in mind the purpose of the Workmen's Compensation Act to require industry to carry the burden of injuries to its employees arising out of and in the course of their employment, we are constrained to hold that the Act covers appellant's injury as being compensable.

We hold that the award is contrary to law, and that the evidence conclusively shows that appellant's injury arose out of and in the course of his employment by appellee, therefore the award is reversed with instructions that the Industrial Board enter an award of compensation in favor of appellant in an amount which said Board deems proper.